# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| GEORGE MUNDT | : | DOCKET NO. 06-0295 |
| --- | --- | --- |
| VS. | : | JUDGE TRIMBLE |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds that the Commissioner's decision is supported by substantial evidence in the record and is consistent with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

On May 13, 2004, George Mundt protectively filed claims for Disability Insurance Benefits and Supplemental Security Income payments. (Tr. 51-53, 252-254). He alleged disability since March 15, 2003, due to his legs, knees, back, and his health. (Tr. 51, 103). The claims were denied initially and upon reconsideration. (Tr. 22-27, 30-34, 255-265). Accordingly, Mundt requested and received an August 23, 2005, hearing before an Administrative Law Judge ("ALJ"). (Tr. 268-286). However, by decision dated December 13, 2005, the ALJ denied benefits, finding at Step Four of the sequential evaluation process, that

Mundt was able to return to past relevant work as a cashier and fast food worker. (Tr. 12-20). Mundt appealed the adverse decision to the Appeals Council. However, on February 1, 2006, the Appeals Council denied Mundt's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 5-7).

On February 22, 2006, Mundt petitioned this court to review the denial of benefits. He alleges the following errors:

(1) the ALJ failed to afford proper consideration to all of plaintiff's medically determined impairments; and

(2) the ALJ's residual functional capacity assessment is not supported by substantial evidence.

## STANDARD OF REVIEW

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented him from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) &

1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## **LAW AND ANALYSIS**

The Commissioner evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Commissioner's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit him to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Commissioner to establish that the claimant can perform other work. If the Commissioner meets this burden, then the claimant must then prove that he cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

The ALJ found at Step Two of the sequential evaluation process that Mundt suffered from severe impairments of discogenic and degenerative disorders of the lumbar spine and borderline intellectual functioning. (Tr. 15, 19). However, the impairments were not severe

3

enough to meet or medically equal any one of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. *Id*.

Plaintiff complains that the ALJ failed to document the psychiatric review technique. The regulations now require that a psychiatric review technique form be completed during the initial and reconsideration phases of the administrative review process. 20 C.F.R. § 1520a(e). The ALJ's only duty is to incorporate the pertinent findings and conclusions of the psychiatric review technique into his decision. *Id*.

The instant record contains two psychiatric review technique forms completed by non-examining agency physicians. (Tr. 175-188, 198). Although, the ALJ did not document the techniques in his decision, the Fifth Circuit has held that an ALJ's failure to complete a psychiatric review technique form is not a substantive error requiring remand, – provided that the ALJ's decision is adequately supported by the record, with due consideration of the different aspects of the claimant's mental condition. *McGehee v. Chater*, 95-10499 (5th Cir. 1996) (unpublished)(citing, *Maya v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1984)).[1] Here, there is ample evidence to support the ALJ's decision. *See*, discussion, *infra*.

The ALJ determined that plaintiff retained the residual functional capacity to lift and carry objects weighing up to 50 pounds occasionally, 25 pounds frequently; to stand, walk and/or sit (with normal breaks and meal period) about six hours within an eight hour workday; and to occasionally perform postural activities involving crouching and kneeling partway (with the need

---

[1] Unpublished Fifth Circuit opinions issued on, or after January 1, 1996, are ordinarily not precedent. FRAP 47.5.4. However, they are persuasive. *Id*. Moreover, the fact that a case remains unpublished reflects the panel's belief that the decision simply reaffirmed a well-settled principle of law. *See*, FRAP 47.5.1.

for assistance to stand up from the floor). (Tr. 18-19).[2] Additionally, Mundt experiences "moderate" limitations in his ability to understand, remember, and carry out detailed instructions, but does not have difficulty getting along with people. *Id*.

In resolving Mundt's mental residual functional capacity, the ALJ relied, in part, on an August 13, 2004, psychological examination conducted by A. James Fix, Ph.D. (Tr. 162-166). During the evaluation, Mundt was alert, responsive, cordial, and cooperative. *Id*. He showed no real tension or irritability, or overt signs of depression. *Id*. Mundt's speech was organized and

---

[2] Medium work is defined and explained by Social Security Ruling 83-10. It provides:
> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10

clear. *Id*. He was oriented in all spheres. *Id*. Upon administration of the Wechsler Adult Intelligence Scale-III, he achieved a verbal IQ of 76, a performance IQ of 76, and a full scale IQ of 79. *Id*. The scores reflected borderline intellectual functioning. *Id*. Mundt reported that in the mornings, he would go to the library to look for jobs. *Id*. In the evenings, he visited with neighbors. *Id*. Fix diagnosed borderline intellectual functioning and to rule out personality disorder, NOS. *Id*. He assigned a current GAF of 50, with the highest being 60. *Id*. Fix opined that Mundt had good social skills, but did not easily handle complexities or strong verbal reasoning. *Id*. Fix opined that Mundt could relate appropriately to other people, and adapt to changes in the environment. *Id*. Mundt could also sustain concentration and attention and remember short and simple instructions. *Id*. He could carry out short and simple instructions under ordinary supervision. *Id*.[3]

Plaintiff complains that the ALJ failed to fully and fairly develop the record by not obtaining a consultative examination to rule out a personality disorder as recommended by Dr. Fix. Under some circumstances, a consultative examination is required to develop a full and fair record. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987); 20 C.F.R. §404.1517. However, the ALJ need not order a consultative examination at government expense "unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision. *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989)(quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)).

---

[3] A Mental Residual Functional Capacity Assessment was completed by a non-examining agency physician on August 19, 2004. (Tr. 171-173). The physician indicated that Mundt had moderate limitations in his ability to understand, remember, and carry out detailed instructions. *Id*. Mundt suffered limitations in his ability to interact with the public. *Id*. No other limitations were indicated. *Id*.

Yet, to obtain reversal due to the ALJ's failure to adequately develop the record, the claimant must also demonstrate resulting prejudice. *Brock v. Chater*, 84 F.3d 726,728 (5th Cir. 1996). "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Id.* (Internal quotes omitted). Thus, even if the instant ALJ arguably erred in failing to obtain an additional consultation, plaintiff has not established any resulting prejudice.

Plaintiff next argues that the ALJ failed to consider all of his impairments in combination. However, the ALJ's decision reflects that he considered all of the medical evidence including references to coronary disease, diabetes mellitus, and obesity. (*See*, Tr. 13-14). For instance, on July 9, 2004, Mundt was seen by Gordon Hrnicek, M.D. for a medical examination. (Tr. 156-157). Mundt reported that he could walk five miles. *Id*. He was obese. *Id*. Sensory-wise he was normal. *Id*. His reflexes and sensation were intact. *Id*. There was nothing remarkable about his physical exam. *Id*. X-rays of the lumbar spine showed diffuse intervertebral skeletal hyperostosis with at least five bridges of osteophytes. *Id*. The disc spaces were otherwise preserved, and were not necessarily indicative of any sort of disabling problem. *Id*. Other than a decrease of the thoracolumbar range of motion, Mundt's range of motion was intact. *Id*. Hrnicek opined that Mundt's musculoskeletal problems were not disabling to him. *Id*. His diabetes in and of itself was not physically disabling. *Id*.

On August 20, 2004, a Physical Residual Functional Capacity Assessment was completed by non-examining agency physician, Glen D. Knosp, M.D. (Tr. 189-196). The assessment was

premised upon Dr. Hrnicek's examination. *Id*.[4] Knosp indicated that Mundt could occasionally lift 50 pounds and frequently lift 25 pounds. *Id*. He could stand, walk, and/or sit about six hours in an eight hour day. *Id*. Pushing and pulling were unlimited. *Id*. Crouching was limited to occasionally. *Id*. No other limitations were indicated. *Id*.

Of course, the evidence which arguably most belies plaintiff's current arguments was his own testimony at the hearing. Despite all of his alleged impairments, plaintiff stated that he had gone swimming only two weeks before the hearing, and was able to walk up seven flights of stairs (three times), with only a little bit of a breathing problem. (*See*, Tr. 278). Despite all of his alleged impairments, plaintiff further represented that he could stand for almost eight hours. (*See*, Tr. 278). Mundt reported that he could sit for about six hours at a time. (Tr. 279-280). He declared that he could lift about one hundred pounds. (Tr. 280). He could crawl, and repetitively reach and grasp. (Tr. 280-281). Mundt reported that his heart condition was doing well, and that he diabetes was pretty well controlled. (Tr. 281-282). Mundt acknowledged that he could cook, perform construction work, paint houses, and do yard work for eight hours per day, 40 hours per week, provided he could rest for an hour or two in between. (Tr. 282).[5]

In sum, the ALJ's residual functional capacity determination is supported by substantial evidence.

---

[4] "[A]n ALJ may properly rely on a non-examining physician's assessment when ... those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991)(quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)).

[5] Plaintiff's counsel now contends that Mundt's personality disorder could cause him to embellish his abilities during the hearing. However, there is no evidence to support this allegation. Moreover, plaintiff's hearing testimony is consistent with his daily activities report completed by Mundt when he applied for benefits. (*See*, Tr. 77).

At Step Four of the sequential process, the ALJ determined that given plaintiff's residual functional capacity, he could return to his past relevant work as a cashier and fast food worker. (Tr. 18). In reaching his decision, the ALJ relied on the testimony of a vocational expert. (Tr. 283-285). Plaintiff does not otherwise challenge the ALJ's Step Four determination.

For the foregoing reasons, the undersigned finds that the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be affirmed and the matter dismissed.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on November 15, 2006.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE